IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 119,660

STATE OF KANSAS,
*Appellee,*

v.

JOSEPH J. CRAIG,
*Appellant.*

SYLLABUS BY THE COURT

1.

When reviewing jury instructions, an appellate court considers all the instructions together as a whole and does not isolate any one instruction.

2.

A court need not give a voluntary intoxication instruction unless sufficient proof exists to establish intoxication to the extent of impairing the defendant's ability to form the requisite intent for the charged crime.

Appeal from Geary District Court; STEVEN L. HORNBAKER, judge. Opinion filed May 1, 2020. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Jason B. Oxford*, assistant county attorney, *Krista Blaisdell*, county attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: A jury found Joseph J. Craig guilty of both first-degree felony murder and second-degree intentional murder for a homicide that occurred under the guise of a drug transaction. In this direct appeal, Craig claims the district court erred when it sentenced him on the more serious felony murder instead of declaring a mistrial because the jury convicted him of two murder offenses for the same killing. He also argues the court should have given an instruction on voluntary intoxication since there was testimony he drank alcohol and smoked marijuana before he fired the three gunshots that killed his victim. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Craig, Gabrielle Williams, Robyn Brown, and a fourth person were drinking alcohol and smoking marijuana one evening at Williams' apartment in Junction City. Williams proposed robbing David Phillips by luring him there for a drug transaction. She thought someone in the group could get Phillips' gun, take his money and marijuana at gunpoint, and then kill him. The fourth person did not want to be involved, so he left. Later that night, Williams texted Phillips to invite him over.

When he arrived, the four smoked marijuana in the bedroom. Williams sat on Phillips' lap. She told him his gun was poking her, so he put it on the floor with his black Carhartt jacket. While he was rolling a marijuana joint, Williams got the gun. Shortly after that, Craig went into the bathroom and Williams followed with the gun. Craig asked if she was "ready to go through with the plan." She shook her head indicating "no."

When the two returned, Phillips was still rolling a joint and had his head down. Craig put the gun to Phillips' head and pulled the trigger, but it misfired. Hearing the clicking sound, Phillips looked up and asked Craig to give back his gun. The two men

2

went into the living room. According to Brown, Phillips seemed to think it was some kind of joke. Craig again pointed the gun at Phillips, telling him to get down.

At that moment, Williams grabbed Phillips' backpack with marijuana in it and jumped out the window. Brown left through the front door. She saw Phillips kneeling and Craig hovering over him with the gun. After she got out, Brown smoked a cigarette in the parking lot and saw Craig fire three shots into Phillips' head. Williams heard the gunshots while running away.

Junction City police discovered Phillips' black Carhartt jacket at Craig's residence. Witnesses indicated Phillips was wearing it when he went to Williams' apartment the night he was killed. The jacket had both Craig's and Phillips' DNA on it.

The State charged Craig with first-degree murder under theories of premeditated murder and felony murder, conspiracy to commit first-degree premeditated murder, aggravated robbery, conspiracy to commit aggravated robbery, and criminal possession of a firearm by a convicted felon. At trial, the district court instructed the jury on the charged crimes, as well as second-degree intentional murder as a lesser included offense of first-degree premeditated murder. The jury returned guilty verdicts on all charges except premeditated murder. For the homicide, the jury convicted him of both felony murder and second-degree intentional murder.

At sentencing, the court dismissed the second-degree murder conviction. It sentenced Craig to life without the possibility of parole for 25 years for the felony-murder conviction and an additional 537 months in prison for the remaining convictions. Craig directly appeals to this court. Jurisdiction is proper. See K.S.A. 2019 Supp. 22-3601(b) (life sentence cases permitted to be directly taken to Supreme Court); K.S.A. 60-2101(b)

3

(Supreme Court jurisdiction over direct appeals governed by K.S.A. 2019 Supp. 22-3601).

## THE TWO MURDER CONVICTIONS FOR THE SAME KILLING

Craig claims the court erred in its handling of the jury's guilty verdicts for felony murder and second-degree intentional murder. First, he argues his due process rights were violated because the jury in his view must have had a reasonable doubt about both the premeditation and felony-murder theories because it found him guilty of second-degree intentional murder. He bases this on the wording of Instruction No. 14. It stated: "If you have a reasonable doubt about the guilt of the defendant as to the crime of murder in the first degree on both theories, then consider whether the defendant is guilty of murder in the second degree."

Second, he contends that after the jury was discharged, these two guilty findings were "legally irreconcilable," so the only remedy was to order a new trial. For this, Craig relies on K.S.A. 22-3421 ("If the verdict is defective in form only, it may be corrected by the court, with the assent of the jury, before it is discharged.") and *State v. Hernandez*, 294 Kan. 200, 205, 273 P.3d 774 (2012) (when faced with inconsistent verdicts, a trial court has a duty to order the jury to reconsider and correct its verdicts).

*Additional facts*

At trial, the district court instructed the jury on (1) felony murder, (2) premeditated murder, and (3) intentional second-degree murder as a lesser included offense of premediated murder.

4

Instruction No. 14 addressed the State's two theories for first-degree murder; it stated:

> "*The State has charged the defendant with one offense of murder in the first degree and has introduced evidence on two theories of proving this crime.*

> "When evidence is presented on the two theories of proving the crime charged, you must consider both theories in arriving at your verdict.

> "In Instruction No. 13, the Court has set out the claims that must be proved by the State before you may find the defendant guilty of premeditated murder.

> "In Instruction No. 12, the Court has set out the claims that must be proved by the State before you may find the defendant guilty of the killing of a person while the defendant was committing or attempting to commit aggravated robbery.

> "*If you do not have a reasonable doubt from all the evidence that the State has proven murder in the first degree on either or both theories, then you should enter a verdict of guilty.*

> "*If you have a reasonable doubt about the guilt of the defendant as to the crime of murder in the first degree on both theories, then consider whether the defendant is guilty of murder in the second degree.*" (Emphases added.)

Instruction No. 15 alerted the jury about the lesser included offense of second-degree murder. It stated,

> "The offense of premeditated murder in the first degree with which defendant is charged includes the lesser offense of murder in the second degree.

"You may find the defendant guilty of first degree murder, second degree or not guilty.

"When there is a reasonable doubt as to which of two or more offenses defendant is guilty, he may be convicted of the lesser offense only."

Instruction No. 16 addressed the elements of second-degree murder, providing:

"*If you do not agree that the defendant is guilty of premeditated murder in the first degree, you should then consider the lesser included offense of murder in the second degree.*

"To establish this charge, each of the following claims must be proved:

"1. The defendant intentionally killed David Phillips.

"2. This act occurred on or about the 25th day of January, 2016, in Geary County, Kansas." (Emphasis added.)

Instruction No. 17 described the sequencing of the first-degree murder charge with the second-degree murder charge, stating:

"*The defendant is charged with one offense of premeditated murder in the first degree.* This verdict instruction will guide you on the verdicts you shall consider.

"You may find the defendant guilty of murder in the first degree; or murder in the second degree; or not guilty.

"When there is a reasonable doubt as to which of two or more offenses defendant is guilty, he may be convicted of the lesser offense only. . . .

6

"First, you shall consider whether the defendant is guilty of murder in the first degree. If you find defendant is guilty of murder in the first degree, the Presiding Juror shall sign the applicable verdict form and, in addition, you shall then determine the alternative theory or theories contained in [verdict form] Number 5, Number 6 or Number 7. . . .

"*Second, if you do not find the defendant guilty of murder in the first degree, you should then consider the lesser offense of murder in the second degree* as defined in Instruction No. 16.

"Third, if you do not find the defendant guilty of second degree murder, you shall find defendant not guilty." (Emphases added.)

Shortly after discharging the jury, the district court questioned the two murder verdicts, saying "I think that we need to talk about that. Maybe not today. But I want the parties to determine and maybe do a little research on where that puts us."

At sentencing, the court revisited the issue. Craig moved for a new trial and judgment notwithstanding the verdict. He insisted the jury must have had reasonable doubt on both first-degree murder theories because it convicted him of second-degree murder. He based this on Instruction No. 14's wording. The State contended the felony-murder conviction should stand and serve as the basis for sentencing. It also argued the court should not dismiss the second-degree murder conviction. Instead, the State contended the court should just not sentence him on that conviction.

The district court decided the jury must have misunderstood the instructions because they were each legally appropriate. It dismissed the second-degree murder conviction over the State's objection and sentenced Craig for the felony murder over his objection. The State does not cross-appeal the dismissal of the second-degree murder conviction, so that action is not before us.

7

*Standard of review*

This issue presents solely a question of law, making de novo review appropriate. See *State v. Sprung*, 294 Kan. 300, Syl. ¶ 2, 277 P.3d 1100 (2012) ("Whether convictions are multiplicitous is a question of law subject to de novo review."); *State v. McKissack*, 283 Kan. 721, 733, 156 P.3d 1249 (2007) (noting "the issue of inconsistent verdicts" and the question of "whether such inconsistency warrants the relief requested" are legal questions).

*Discussion*

We review jury instructions as a whole and do not isolate any one instruction. *State v. Sisson*, 302 Kan. 123, 130-31, 351 P.3d 1235 (2015). If the instructions properly and fairly state the law as applied to the facts in a case, and the jury could not have been reasonably misled by them, those instructions will not result in reversible error even if they were in some manner erroneous. *State v. Brice*, 276 Kan. 758, 761, 80 P.3d 1113 (2003).

The elements of felony murder are: (1) "the killing of a human being" and (2) that killing is "committed . . . in the commission of, attempt to commit, or flight from any inherently dangerous felony." K.S.A. 2019 Supp. 21-5402(a)(2). The elements of second-degree intentional murder are: (1) "the killing of a human being" and (2) that killing is "committed . . . intentionally." K.S.A. 2019 Supp. 21-5403(a)(1). The Kansas felony-murder statute only requires proof that the defendant engaged in dangerous, felonious conduct and that a death occurred as a result of that conduct. Intent to kill is not an element of felony murder. *State v. Patterson*, 311 Kan. __, 455 P.3d 792, 798 (2020). "It is felonious intent, rather than homicidal intent, that provides the malice and intent

8

required for a first-degree felony-murder conviction." *State v. Seba*, 305 Kan. 185, 196, 380 P.3d 209 (2016).

Instruction No. 12 correctly informed the jury about the elements of felony-murder. It stated "[t]o establish [the felony murder] charge, each of the following claims must be proved: 1. The defendant, or another, killed David Phillips," and "2. The killing was done while defendant was committing or attempting to commit aggravated robbery. . . ." As the district court noted, the instructions defining both felony murder and second-degree murder were legally and factually appropriate. And there is no claim otherwise.

Instruction No. 14 correctly stated that if the jury had a reasonable doubt about Craig's guilt as to the first-degree murder charge *on both theories*, then it should consider whether he was guilty of second-degree murder. And Instructions No. 15, No. 16, and No. 17 indicated if the jury had a reasonable doubt about Craig's guilt for *premeditated murder*, then it should consider the second-degree murder crime. See *State v. McLinn*, 307 Kan. 307, 324, 409 P.3d 1 (2018) (second-degree intentional murder is a lesser included offense of first-degree premeditated murder); K.S.A. 2019 Supp. 21-5109(b)(1) (no lesser degrees of felony murder).

But the jury obviously thought it could convict Craig of both felony murder and second-degree murder simultaneously, despite being told in Instruction No. 14 to consider second-degree murder if it had a reasonable doubt on both theories of first-degree murder. Such a belief seems plausible given that Instruction Nos. 16 and 17 told it to consider the second-degree murder offense if it did not find Craig guilty of premeditated murder. And, of course, it acquitted him of that offense.

Even so, all instructions were legally correct. The jury's second-degree murder verdict does not prove, as Craig contends, that the jury must have had a reasonable doubt

9

about the elements of felony murder. Instead, it shows the jury followed Instruction Nos. 16 and 17 and had a reasonable doubt Craig committed premeditated murder. The Due Process Clause of the Fourteenth Amendment requires proof beyond a reasonable doubt of each element of the crime charged. See *State v. Douglas*, 230 Kan. 744, 745, 640 P.2d 1259 (1982). And for the reasons explained, the discrepancy Craig asserts does not establish that the jury failed to find each element of the felony murder beyond a reasonable doubt.

Craig's second argument asserts that a new trial is required because the verdicts were irreconcilable. It fails as well. In the case Craig relies on, *Hernandez*, 294 Kan. at 207, there were irreconcilable verdicts when a jury convicted the defendant of both aggravated indecent liberties with a child and attempted aggravated indecent liberties with a child based on the same conduct. 294 Kan. at 205-06. The *Hernandez* court held those verdicts were "legally and factually inconsistent" because "[t]he trial court could not legally enter judgment on either verdict because the jury's finding on the other verdict precludes such judgment." 294 Kan. at 207. It determined the trial court erred by assuming it reconciled the conflicting verdicts at sentencing "as if the charges had been brought in the alternative, or as if the charges merged so that the defendant was only convicted of the greater offense." 294 Kan. at 207. The *Hernandez* court held the trial court should have ordered the jury to reconsider and correct its verdicts. 294 Kan. at 204-05. And since that did not happen, the court reversed the convictions and remanded the case for a new trial. 294 Kan. at 207.

But unlike *Hernandez*, Craig's two murder verdicts are not inherently irreconcilable. See 294 Kan. at 204 ("It is a legal impossibility to both attempt the commission of a crime and complete the commission of the same crime, because the failure to complete commission of the crime is an element of attempt."). Premeditated murder and felony murder are separate theories of the same offense, i.e., first-degree

10

murder. *State v. Thach*, 305 Kan. 72, 87, 378 P.3d 522 (2016); K.S.A. 2019 Supp. 21-5402(d) (felony murder is an alternative method of proving murder in the first degree and is not a separate offense of premeditated murder). And second-degree intentional murder is not mutually exclusive from premeditated murder, but simply a lesser degree of the same offense, i.e., premeditated murder. *McLinn*, 307 Kan. at 324.

We also note the district court did not err by discharging the jury without having it clarify its verdict, as Craig's appellate brief might be read to suggest. See K.S.A. 22-3421 ("If the verdict is defective in form only, it may be corrected by the court, with the assent of the jury, before it is discharged."). As discussed above, there was no defect because the jury found each required element of both offenses. And since Craig cites K.S.A. 22-3421, but offers no rationale why these circumstances implicate it, we hold there was no defect in form. The instructions permitted the jury to end up where it did. K.S.A. 22-3421 has no application here.

To sum up, Craig fails to demonstrate either claim: that his first-degree murder sentence was imposed in violation of his due process right to have the jury find each element of the offense beyond a reasonable doubt, or that the jury's first- and second-degree murder verdicts were so irreconcilable as to require a new trial. The court properly sentenced Craig on the first-degree felony-murder conviction. See *State v. Harris*, 310 Kan. 1026, 453 P.3d 1172 (2019) (upholding the district court's imposition of sentence on a more severe crime when jury convicted defendant of two offenses based on the same criminal act).

11

Craig claims the evidence about his use of alcohol and marijuana and unclear communication shortly before the shooting made it appropriate to give a voluntary intoxication instruction. We disagree.

*Standard of review*

An appellate court reviews instructional error claims in multiple steps. First, it decides whether the issue was properly preserved. Second, it considers whether the instruction was legally and factually appropriate. It exercises unlimited review of these questions. And when the reviewing court finds error, it considers whether that error is reversible. *State v. Gentry*, 310 Kan. 715, 720, 449 P.3d 429 (2019).

If the defendant failed to properly request the instruction in the district court, the clearly erroneous standard applies to whether an instructional error is reversible. See K.S.A. 2019 Supp. 22-3414(3) ("No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous."); *State v. Murrin*, 309 Kan. 385, 392, 435 P.3d 1126 (2019) (clear error for unpreserved instructional error claim). Craig agrees he did not request this instruction during trial.

*Discussion*

While not a defense to general intent offenses, voluntary intoxication may be used to negate the intent element of specific intent crimes. *Seba*, 305 Kan. at 211. K.S.A. 2019 Supp. 21-5205(b) declares:

"An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind."

Craig claims a voluntary intoxication instruction would have been legally appropriate for the charged offenses of premeditated murder, second-degree murder, conspiracy to commit premeditated murder, and conspiracy to commit aggravated robbery. Of those, premeditated murder and second-degree intentional murder are specific intent crimes. *State v. Overstreet*, 288 Kan. 1, 11, 200 P.3d 427 (2009) ("'The specific intent required to be proved for conviction on a premeditated first-degree murder charge is premeditation.'"); *State v. Deal*, 293 Kan. 872, 883, 269 P.3d 1282 (2012) (intentional second-degree murder is a specific intent crime). But the remaining conspiracy offenses are not as obvious, and they are the only convictions that could be affected by this appeal.

Some caselaw undercuts Craig's claim that conspiracy to commit aggravated robbery is a specific intent crime. He relies on *State v. Warren*, 252 Kan. 169, 174, 843 P.2d 224 (1992), in which the court held conspiracy to commit a robbery was a specific intent crime. But in *State v. Butler*, 307 Kan. 831, 852, 416 P.3d 116 (2018), the court held that the mental state needed to be proved for convicting the defendant for conspiracy to commit aggravated robbery was "'knowingly.'"

We need not resolve that question, however, because the record demonstrates a voluntary intoxication instruction was not factually appropriate in Craig's case, so this claim of error fails on that basis. A court need not give a voluntary intoxication instruction unless sufficient proof exists to establish intoxication to the extent of impairing the defendant's ability to form the requisite intent for the charged crime. *State*

13

*v. Betancourt*, 299 Kan. 131, 141, 322 P.3d 353 (2014); see also *State v. Becker*, 311 Kan. 176, Syl. ¶ 6, 459 P.3d 173 (2020) (need for "direct evidence" of impairment in a premeditated first-degree homicide trial). That evidence is lacking in Craig's case.

The trial evidence on which Craig relies comes from the testimony of Williams and Jeremiah Warren, the person who left before Phillips came to the apartment. Both made passing comments about Craig drinking alcohol and smoking marijuana the evening Phillips died. Williams testified everyone was smoking marijuana and drinking alcohol, and when she was in the bathroom with Craig just before the shooting, he was "mumbling to himself." But the record is silent about how much marijuana and alcohol Craig consumed or whether this "mumbling" happened only when he was intoxicated to the level of impairing his ability to form specific intent.

In *State v. Hilt*, 299 Kan. 176, 193, 322 P.3d 367 (2014), the court held evidence pointing to consumption, but not intoxication to the extent that the defendant's ability to form the requisite intent was impaired, was not enough to warrant a voluntary intoxication instruction. See *Becker*, 459 P.3d at 184 (a reviewing court will not infer impairment based on evidence of consumption alone). And in *State v. Kidd*, 293 Kan. 591, 596, 265 P.3d 1165 (2011), the court held evidence showing the defendant consumed alcohol, made "'crazy' statements" and seemed "'buzzed'" was insufficient to require a voluntary intoxication instruction. In *State v. Hernandez*, 292 Kan. 598, 607, 257 P.3d 767 (2011), the court determined evidence of alcohol and marijuana consumption and testimony that the defendant was "'high' or 'intoxicated'" was not sufficient to require a voluntary intoxication instruction. Similarly, Williams' testimony is not enough to justify the instruction.

Craig also relies on Warren's statements that he observed Craig "in an extreme state of intoxication shortly before the shooting occurred." He points out Warren's

14

testimony that Craig was unable to stand or communicate clearly. But the record reflects this testimony, when read in context, does not necessarily show Craig was extremely intoxicated that night. At most, it appears, neutral or ambiguous about Craig's impairment.

During his cross-examination, defense counsel asked Warren "how intoxicated was Mr. Craig on that evening?" He answered, "Pretty drunk. He was sitting down." Counsel then asked "do you mean that he was so intoxicated he couldn't stand up?" Warren responded "he was on the bed laying down with his eyes closed. I had to nudge him a little bit to get up. So, I don't know if he was just tired and drunk at the same time, or if he was just that drunk." This back-and-forth cannot show Craig lacked the ability to form the requisite intent, and Brown's testimony describing the moment immediately before the killing is also pertinent. She said Craig "was just relaxed, just sitting. We was [*sic*] all high."

The evidence about Craig's state of mind does not establish any impairment deprived him of the ability to form the requisite mens rea. Indeed, other evidence strongly suggests he was not so intoxicated and was able "to reason, to plan, to recall, or to exercise motor skills." *Betancourt*, 299 Kan. at 142. For example, when discussing the plan, according to Williams, he "was stating that he wanted [Phillips'] gun." This suggests he could think and communicate what he wanted to get by robbing and killing his victim. And by all accounts, Craig was also able to walk to the bathroom and back to the bedroom without anyone's assistance, meaning he could exercise motor skills. Craig and Williams discussed their plan before 7 p.m., and he remembered and successfully carried it out after 11 p.m.

Nothing in the record points to memory loss or inability to recall events before or during the commission of the crimes. See *Betancourt*, 299 Kan. at 141 (loss of memory

15

or inability to recall incidents before or during the commission of the crime may show an inability to form the required intent). When he pulled the trigger, Craig was capable of processing that the gun misfired and recover from that with another attempt. See 299 Kan. at 142-43 (while there was evidence of consumption of alcohol and cocaine and the defendant's own statement that he was "'pretty effed up,'" there was other evidence showing he could mentally and physically function; holding no error to omit a voluntary intoxication instruction); *Hilt*, 299 Kan. at 193 (noting evidence showing the defendant was high and made crazy statement; holding no error based on other evidence suggesting the ability to form specific intent).

Finally, we observe there was not much made of Craig's intoxication at trial. Defense counsel briefly mentioned Craig was drunk and high during closing argument but certainly did not argue its significance or any implication to the jury. Stated differently, Craig never relied on voluntary intoxication in defending himself. See *Betancourt*, 299 Kan. at 143 (noting defense did not emphasize evidence of intoxication introduced at trial or argue voluntary intoxication to the jury). His effort to create an alternate reality on appeal is unavailing.

From this record, we hold a voluntary intoxication instruction would not have been factually appropriate.

Affirmed.

MICHAEL E. WARD, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Ward was appointed to hear case No. 119,660 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.