NOT DESIGNATED FOR PUBLICATION

No. 123,151

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHN D. LOGAN JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; DAVID B. DEBENHAM, judge. Opinion filed May 20, 2022.
Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Michael J. Duenes*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., HILL and GARDNER, JJ.

PER CURIAM:  John D. Logan Jr. claims the trial court failed to properly instruct his jury and two improper arguments by the prosecutor are sufficient reasons to reverse his conviction. Our review of the record persuades us that there was no clear error in the jury instructions. And one of the prosecutor's comments is harmless error and the other was an inference drawn from the evidence and was permissible. As a result, we affirm Logan's conviction.

1

*Criminal charges follow a party, a fight, and a shooting.*

Logan sometimes stayed at the apartment of Marcus Parker and his family in Topeka. At some point, Parker confronted Logan about bringing a gun into his apartment. The confrontation became a physical fight. Parker broke Logan's arm and Logan had to be hospitalized. Logan was prescribed fentanyl and morphine for his injuries. After Logan was released from the hospital the men reconciled, and Logan continued to stay at Parker's apartment.

Then, one evening, when Parker and Logan attended an outdoor party at a friend's house, Logan shot Parker in the side of the head. A Topeka police officer testified that the gun used to shoot Parker was a revolver. After he was shot, Parker grabbed Logan and fought with him until Parker passed out.

Parker was taken to the hospital and survived his injuries. Logan was also taken to the hospital after the shooting because he sustained head injuries when Parker fought with him until he passed out from the gunshot wound.

The State charged Logan with aggravated battery, criminal possession of a weapon, and attempted second-degree murder. At trial the State called several of the partygoers to testify. The witnesses testified that they saw and heard Logan shoot Parker and then heard Parker ask Logan why he shot him.

Alcohol was flowing that evening. The doctor who treated Logan the night of the shooting testified that Logan had a blood alcohol level of over .4. The doctor explained an alcohol level of .3-.35 typically leads to stupor or a coma while a level of .5 is possible death. The doctor testified if Logan drank alcohol with the pain medicine he was prescribed for his arm, the combination could alter his mental status—but the doctor did not recall Logan having anything other than alcohol in his system. There was also

testimony that Logan had a blood alcohol content of .11 when he was hospitalized in early July when Parker assaulted him.

The defense called a detective from the Topeka Police Department who had interviewed Logan at the hospital after he shot Parker. The detective said Logan smelled like alcohol and could not hold a conversation or stay conscious. The defense called the first officer who arrived at the scene of the shooting to testify that Logan had trouble standing and was incoherent at times. Based on this evidence and his blood alcohol level, Logan argued that he was too intoxicated to intend to kill Parker. In other words, he was using a voluntary intoxication affirmative defense.

The defense did not request an instruction that said Logan did not have the burden of proving his affirmative defense and did not object to the lack of that instruction at trial.

The court did instruct the jury: "The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty." The court also instructed the jury that voluntary intoxication may be a defense to attempted second-degree murder. The court did not provide an instruction that Logan did not have the burden of proving his affirmative defense of voluntary intoxication.

After closing arguments, the defense moved for a mistrial based on these statements the State made in its closing argument:

- "[T]he weapon that [Logan] used is a mechanical device. It is a revolver. *It has to be cocked and then it has to be fired.*" (Emphasis added.)

- "Mr. Logan might be the kind of person who drinks so much that he has a very high tolerance for alcohol."

The parties adopted opposite positions on these statements. The defense argued there was no evidence about whether Logan's revolver was a double action or single action revolver so they did not know if he had to cock it and then pull the trigger for it to fire, or whether simply pulling the trigger would discharge the weapon. The State argued that the jury could use its common knowledge about how firearms work to make the connection that Logan had to cock the gun.

As for his drinking, the defense argued there was no testimony about Logan's tolerance for alcohol so the State's argument was inappropriate. The State said it never stated he had a high tolerance but said some evidence might have suggested he could have a high tolerance—which is not improper.

The court denied Logan's motion for a mistrial and noted that if he had objected when the statements were made the court could have instructed the jury to disregard them.

The court sentenced Logan to 216 months in prison. Logan timely appeals his conviction, making three arguments:

- the district court erred by failing to instruct the jury that he did not bear the burden of proof on his affirmative defense;
- the State committed error by arguing facts not in evidence; and
- the cumulative effect of these errors denied Logan a fair trial.

We will address the issues in that order.

4

*We find no clear jury instruction error.*

Logan argues that the court erred by not providing an instruction that the burden of proof does not shift to the defendant to prove an affirmative defense. See K.S.A. 2020 Supp. 21-5108(c). Logan says the district court should have given the following instruction:

> "The defendant raises voluntary intoxication as a defense. Evidence in support of this defense should be considered by you in determining whether the State has met its burden of proving that the defendant is guilty. The State's burden of proof does not shift to the defendant." PIK 4th 51.050 (2013 Supp.)

Since Logan did not object at trial to the court failing to give this instruction, we review for clear error. K.S.A. 2020 Supp. 22-3414(3); *State v. Craig*, 311 Kan. 456, 464, 462 P.3d 173 (2020).

Our review of the caselaw teaches us that the Kansas Supreme Court has held that a court's failure to instruct the jury on the State's continuing burden is not clearly erroneous when the jury has been instructed on the presumption of innocence and the State's general burden of proof. *State v. Buck-Shrag*, 312 Kan. 540, 551-54, 477 P.3d 1013 (2020); *State v. Cooperwood*, 282 Kan. 572, 581-82, 147 P.3d 125 (2006).

We see similar facts here. Logan failed to request a continuing burden instruction for his affirmative defense and the court instructed the jury generally on the burden of proof and presumption of innocence. The State notes the prosecutor also reinforced the State's continuing burden in closing argument by saying, "[T]he State has the burden of proof."

5

The continuing burden instruction provided to the jury was both factually and legally appropriate because it correctly stated the law and Logan asserted an affirmative defense at trial. The issue is that Logan did not request the instruction or object to its omission at trial. The State is correct that the Kansas Supreme Court caselaw is clear that the failure to provide such an instruction is not clear error as long as the court provided a sufficient burden of proof instruction. We see no reversible error here.

*We find harmless error and permissible inferences in the prosecutor's statements that Logan complains about.*

Logan argues that the State erred by making two statements at trial that were not supported by the evidence: (1) that the gun Logan used to shoot Parker had to be cocked and then fired; and (2) that Logan might be the kind of person who drinks so much that he has a high tolerance for alcohol. The first statement was made to show the steps Logan took to shoot Parker—cocking the gun, pointing it at Parker's head, pulling the trigger—to prove intent. The second statement was made in response to Logan's defense that he was so intoxicated that he could not form the necessary intent to be guilty of attempted murder.

We use a two-step process to evaluate claims of prosecutorial error: error and prejudice. Under the first step of the test, appellate courts determine whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. Then, if error is discovered, the State must show beyond a reasonable doubt that the error complained of did not affect the outcome of the trial in light of the entire record, i.e., there is no reasonable possibility that the error contributed to the verdict. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

6

When a prosecutor argues facts not in evidence, the first step of the prosecutorial error test is met. *State v. Chandler*, 307 Kan. 657, 678-79, 414 P.3d 713 (2018). "'A prosecutor has wide latitude in crafting arguments and drawing "reasonable inferences from the evidence but may not comment on facts outside the evidence. "'" *State v. Anderson*, 308 Kan. 1251, 1261, 427 P.3d 847 (2018) (quoting *State v. Longoria*, 301 Kan. 489, 524, 343 P.3d 1128 [2015]).

*Cocking the gun*

Logan argues the prosecutor's comment that the gun he used had to be cocked and fired was error because that information was not in the evidentiary record. Indeed, there was no testimony on what type of revolver Logan used or whether he had to cock the gun to shoot Parker. The State concedes that the prosecutor committed error by stating that Logan had to cock the gun and then pull the trigger because that information was not in evidence. But was the error harmless?

As the party benefitting from the error, the State must show that there is no reasonable probability that the error contributed to the verdict. *Sherman*, 305 Kan. at 109. Logan argues the State cannot meet its burden because the erroneous statement directly undercut his main defense that he was too intoxicated to form the intent to kill Parker. The State says the error is harmless because inclusion of the gun cocking comment added little to the prosecutor's unobjectionable statements showing the intentional nature of Logan's actions:

- Logan "stands up and aims the gun in the direction of Mr. Parker's head and discharges a single shot."

- Logan "had to aim the gun . . . he had to pull the trigger."

7

- "[T]he weapon that [Logan] used is a mechanical device. It is a revolver. It has to be cocked and *then it has to be fired. It also has to be aimed.* These are purposeful acts. These are acts that take place over a certain period of time that requires a person to make a deliberate choice about what they're going to do. *The way in which the pistol was fired, the direction it was . . . fired into Mr. Parker's head*, all show a desire or conscious objective to kill Mr. Parker." (Emphasis added.)

There is no reasonable probability that the outcome of the trial would have been different if the prosecutor only argued that Logan aimed the gun and shot Parker in the head instead of cocking, then aiming, then shooting the gun. There is no dispute that Logan is the one who shot Parker. The prosecutor made arguments based on Logan's other actions which showed he intended to kill Parker. Further, Logan's main defense was that he was too intoxicated to form the intent to shoot Parker; the prosecutor's statement about cocking the gun did not undermine Logan's defense. The prosecutor's statement about cocking the gun may have affected the outcome of the trial if Logan's defense was that his gun discharged accidentally, but that is not the case here. Although the prosecutor committed error by stating facts not in evidence, that error does not require reversal.

*Logan's tolerance for alcohol*

Logan argues the prosecutor's statement that he might drink so much because he has a high tolerance for alcohol is error because there was no evidence about his tolerance for alcohol. Here is the statement, in context:

"He may have been drunk. But that doesn't necessarily mean . . . that he was incapable of forming that intent. One of the other things that you might note is that when he went to the hospital on July 1st, he was intoxicated through the use of alcohol. He was intoxicated through use of alcohol on July 20th as well. *Mr. Logan might be the kind of person who drinks so much alcohol that he has a very high tolerance for alcohol.*" (Emphasis added.)

8

Logan contends there was no evidence about his alcohol tolerance. Logan says the only evidence the State referred to is that he had alcohol in his system both times he was admitted to the hospital. He asserts that evidence that he drank alcohol on a prior occasion is a far cry from evidence that he has a high tolerance for alcohol.

The State argues that the prosecutor's comment about Logan's tolerance was not error. A prosecutor may offer comments based on reasonable inferences from the evidence. *State v. Story*, 300 Kan. 702, 713, 334 P.3d 297 (2014). The State argues it was making the legitimate inference that Logan has a pattern of being intoxicated and the jury could infer, based on its common knowledge, that a person who drinks to intoxication as a pattern tends to build a tolerance for alcohol.

Under Kansas law, prosecutors are allowed to draw reasonable inferences from the evidence. *Anderson*, 308 Kan. at 1261. Here, it was reasonable for the prosecutor to infer that Logan could have a high tolerance for alcohol based on his intoxication both times he went to the hospital that month. Importantly, the prosecutor only suggested that Logan might drink enough to have a high tolerance for alcohol, not that Logan does drink excessively or does have a high tolerance for alcohol.

Logan presented substantial evidence that he was highly intoxicated the night of the shooting—his BAC was over .4 which is between stupor and possible death; he was incoherent and had trouble standing at the scene; he could not stay awake or hold a conversation at the hospital. Despite this evidence, the jury still rejected his voluntary intoxication defense. The jury necessarily found that Logan's actions that night — pointing his gun at Parker's head and pulling the trigger—were intentional. There is no reasonable probability that the prosecutor's brief suggestion at the end of the State's closing argument that Logan might drink enough to have a high alcohol tolerance affected the outcome of the trial. This is not reversible error.

*The cumulative trial errors doctrine does not apply.*

Cumulative trial errors, when considered together, may require reversal of a conviction when the circumstances show that the defendant was substantially prejudiced by the errors and denied a fair trial. In assessing the cumulative effect of the errors we examine the entire record, consider how the trial judge dealt with errors as they arose, the nature and number of the errors and their interrelationship, and the overall strength of the evidence. *State v. Hirsh*, 310 Kan. 321, 345-46, 446 P.3d 472 (2019).

The circumstances of this case demonstrate why the cumulative error doctrine is inapplicable. First, Kansas Supreme Court precedent teaches us that there is no clear error when a district court fails to provide a continuing burden instruction if the jury is properly instructed on the State's burden of proof. That is what occurred here.

Secondly, the prosecutor's comment that Logan might drink enough to have a high tolerance for alcohol was not error but rather a permissible observation about the evidence. Therefore, the comment cannot be used as cumulative error.

Finally, the prosecutor's statements about cocking the gun was harmless error. There is no doubt that Logan is the one who shot Parker in the head. Logan's jury chose to reject his voluntary intoxication defense and find that he intended to kill Parker.

Logan was not denied a fair trial due to cumulative errors.

Affirmed.

\* \* \*

ATCHESON, J., concurring:  I join in the majority opinion in all respects, except the last issue addressing cumulative error, and on that point, I concur in the result. We, therefore, have properly affirmed Defendant John D. Logan, Jr.'s conviction for attempted second-degree murder and the resulting sentence.

I would analyze cumulative error in this case somewhat differently in that I believe there are two errors that must be considered. First, the omission of an instruction directly informing the jurors how to consider Logan's affirmative defense of intoxication amounts to error, even though it does not rise to clear error. See *State v. Staten*, 304 Kan. 957, 966-67, 377 P.3d 477 (2016). Second, the prosecutor improperly argued to the jurors that Logan used a single-action handgun when no such evidence had been admitted at trial. We should consider both of those defects in reviewing the trial for cumulative error.

Cumulative error is not a device to breathe new life into trial errors that have been invited, waived, or forfeited and, therefore, are otherwise unreviewable on appeal. See *State v. Shears*, No. 121,303, 2021 WL 4703254, at \*4 (Kan. App. 2021) (unpublished opinion), *petition for rev. filed* November 8, 2021. Although Logan failed to object to the jury instructions during the trial, the failure did not extinguish his legal claim of error. Rather, the lack of objection triggered a more demanding standard for showing reversible error on appeal. Other appellate courts have included those instructional errors in determining cumulative error. *State v. Thomas*, 311 Kan. 905, 915-16, 468 P.3d 323 (2020); *State v. Conaway*, No. 121,848, 2021 WL 4704029, at \*6 (Kan. App. 2021) (unpublished opinion), *rev. denied* 314 Kan. 856 (2022). I would do so here. But the victory for Logan is a distinctly limited one.

In considering cumulative error, we ask whether the collective impact of the reviewable errors deprived a defendant of a fair trial. As the majority points out, we

11

examine the trial record as a whole, taking account of "how the trial judge dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence." *State v. Miller*, 308 Kan. 1119, 1176, 427 P.3d 907 (2018). When the heightened review for constitutional error applies to one of the mistakes—as it does for the prosecutor's misstatement in closing argument—that standard governs the cumulative error analysis. *Thomas*, 311 Kan. at 914.

Notwithstanding the formidable burden on the Sate, Logan falls short in arguing for reversal based on cumulative error. As the majority has outlined, the circumstances of the shooting show Logan to have deliberately aimed his handgun at Marcus Parker and pulled the trigger. Logan never claimed the handgun discharged accidentally while inadvertently pointed at Parker. The jurors heard various witnesses testify about Logan's insobriety, and he indisputably was quite drunk.

The instructions informed the jurors that voluntarily intoxication was a defense to the extent it may have negated the required intent for the attempted murder charge and that the State had to prove intent beyond a reasonable doubt. A more detailed explanation of the interplay between the affirmative defense and the elements to be proved would have been better. See *State v. Buck-Schrag*, 312 Kan. 540, 553-54, 477 P.3d 1013 (2020). But the jurors were apprised of the governing law, and the facts presented strong, if circumstantial, evidence of intent. See *State v. Thach*, 305 Kan. 72, 83-84, 378 P.3d 522 (2016) (criminal intent commonly proved through circumstantial rather than direct evidence). Likewise, the prosecutor's argument about the way the handgun had to be fired didn't appreciably change the fundamental facts establishing the deliberateness of Logan's conduct in aiming and firing the weapon at Parker at nearly point-blank range. So, I am persuaded there was no reasonable possibility the jury verdict would have been different if those errors had not occurred.