IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 122,626

STATE OF KANSAS,
*Appellee*,

v.

JOHNATHAN ELI CARTER,
*Appellant*.

SYLLABUS BY THE COURT

1.

Jury instructions must be legally appropriate by fairly and accurately stating the applicable law. They must also be factually appropriate with sufficient competent evidence to support them.

2.

To prove felony murder, there must be a direct causal connection between commission of the felony and the homicide. Such causal connection is established if the homicide lies within the res gestae of the underlying crime with no extraordinary intervening event to supersede that direct causal connection.

3.

Felony-murder jury instructions which only allow a guilty verdict if the jury concludes the death occurred "while" defendant was committing the underlying felony satisfy the res gestae requirement of causation.

1

4.

   If someone dies in the course of an inherently dangerous felony, all the participants in the felony are equally guilty of the felony murder no matter who committed the killing. All participants in a felony murder are principals.

5.

   As a principal, a participant in a felony murder cannot be an aider or abettor.

6.

   In this case, the use of "defendant or another" in the felony-murder jury instructions to identify who killed each victim is legally appropriate because all participants of felony murder are guilty as principals. It is factually appropriate because the evidence left some question about who fired the lethal shot as to each victim.

   Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed September 16, 2022. Affirmed.

   *Sam S. Kepfield,* of Hutchinson, argued the cause and was on the brief for appellant.

   *Matt J. Maloney*, assistant district attorney, argued the cause, and *Marc Bennett,* district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

   WILSON, J.: A jury convicted Johnathan Eli Carter of two counts of first-degree felony murder, one count of criminal discharge of a firearm at an occupied dwelling, and one count of criminal possession of a weapon by a convicted felon. Carter now appeals, arguing the district court erred in its jury instructions on his two felony-murder charges. For the reasons below, we find no error and affirm the district court.

2

On the day of the shooting, Betty Holloman was at home with her family and some friends, including Brenton Oliver. The trouble started when Jamion Wimbley drove up to drop someone off. While Wimbley was sitting in his parked car, Oliver ran outside, yelling. Wimbley and Oliver—members of rival gangs—argued for a while. Then Wimbley disengaged, told Oliver he would be back, and sped off.

Later that day, Carter—affiliated with the same gang as Wimbley—drove to Holloman's home to pick up one of the guests. After another argument broke out, Carter got out of his car holding a handgun. Holloman's husband warned Carter not to start anything, so Carter began to get back in his car, but Oliver rushed him.

Chaos then erupted as Wimbley's car came back down the street. With Wimbley were two more of Carter's associates. As Wimbley pulled up across the street from Holloman's house, someone began firing shots from the backseat window of Wimbley's car. By this point, Carter and Oliver were physically fighting. Wimbley jumped from his car to help Carter while their two associates continued firing.

In the ensuing gunfight, Holloman and Oliver were shot. Carter, Wimbley, and their associates all fled. Holloman died at the scene and Oliver died a short time later at the hospital.

An autopsy revealed that Oliver had been shot five times. Ballistics evidence showed at least four guns had been used in the shooting. Law enforcement recovered four firearms during their investigation, but they were unable to match any bullets or casings from the scene to three of the firearms. They linked six .22 caliber bullet casings found at the scene to a .22 Ruger found in the car Carter had been driving on the day of the

3

shooting. The coroner also extracted two .22 caliber bullets from Oliver's upper back which were linked to the same .22 Ruger as the six casings. A third .22 caliber bullet was recovered from Oliver's fatal wound. Law enforcement could not link it to a specific gun.

Police arrested Carter about a week after the shooting. In an interview, he admitted firing six shots at Oliver as Oliver was running toward Holloman's house. Carter explained that he had been at Holloman's house simply to pick up a guest and he had no stake in the ongoing arguments among the others who were at Holloman's house that day, so he was angry that he had gotten wrapped up in their conflict.

The State charged Carter with the first-degree premeditated murder of Oliver or, in the alternative, the first-degree felony murder of Oliver; the first-degree felony murder of Holloman; criminal discharge of a firearm at an occupied dwelling; and criminal possession of a weapon by a convicted felon.

The jury convicted Carter of the felony murder of Oliver; the felony murder of Holloman; criminal discharge of a firearm; and criminal possession of a weapon. Separate juries also convicted Wimbley and his passengers of crimes arising from Holloman's and Oliver's deaths. See *State v. Wimbley*, 313 Kan. 1029, 1031, 493 P.3d 951 (2021); *State v.* [*Quincy*] *Carter*, 312 Kan. 526, 528, 477 P.3d 1004 (2020); *State v.* [*Brent*] *Carter*, 311 Kan. 783, 787-88, 466 P.3d 1180 (2020). Carter timely appeals.

ANALYSIS

Carter challenges the elements instructions for his felony-murder charges. He asserts those instructions were erroneous because they contained no language on res gestae or causation. Thus, he asserts the jury did not have to find a causal connection between the underlying felony of criminal discharge of a firearm and the killing of Oliver

4

and Holloman. He further argues that this asserted error was not harmless because the jury may have convicted him for the killings even if he did not fire the fatal shot.

*Standard of Review and Preservation*

We follow a three-step process when analyzing jury instruction issues. First, we determine whether we can or should review the issue—that is, whether there are any jurisdictional or preservation problems. Second, we consider the merits to determine whether an error occurred at the district court level. Third, if an error has occurred, we assess whether that error requires reversal. Whether a party has properly preserved an instructional issue determines the standard of review for reversibility on the third step. *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018).

Jurisdiction is proper under K.S.A. 2021 Supp. 22-3601. Because Carter objected below, we review his jury instruction claims under the nonconstitutional, or statutory, harmless error standard, which is the standard of review for a preserved instruction issue. See *State v. McCullough*, 293 Kan. 970, Syl. ¶ 9, 270 P.3d 1142 (2012) (under nonconstitutional harmless error standard, party benefitting from error must show there is no reasonable probability error affected the trial's outcome in light of the entire record). The parties agree that this is the appropriate standard of review.

When reviewing alleged jury instruction errors, we must determine whether the instructions given were both legally and factually appropriate. For an instruction to be legally appropriate, it must fairly and accurately state the applicable law. *State v. McDaniel*, 306 Kan. 595, 615, 395 P.3d 429 (2017). We exercise unlimited review in determining whether an instruction was legally appropriate. *State v. Johnson*, 304 Kan. 924, 931-32, 379 P.3d 70 (2016). For an instruction to be factually appropriate, there

5

must be sufficient evidence—viewed in a light most favorable to the requesting party—to support the jury instruction. *State v. Bodine*, 313 Kan. 378, 386, 486 P.3d 551 (2021).

When analyzing whether instruction error has occurred, this court does not look at one instruction in isolation but considers the instructions as a whole. *State v. Llamas*, 298 Kan. 246, 261, 311 P.3d 399 (2013). "If the instructions properly and fairly state the law as applied to the facts in a case, and the jury could not have been reasonably misled by them, those instructions will not result in reversible error even if they were in some manner erroneous." *State v. Craig*, 311 Kan. 456, 461, 462 P.3d 173, *cert. denied* 141 S. Ct. 918 (2020).

*Discussion*

The district court gave the following felony-murder instructions at trial:

"INSTRUCTION 5 (Theory 1(b))

"Johnathan Carter is charged in Count Two with murder in the first degree of Brenton Oliver (felony murder). Johnathan Carter pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. Johnathan Carter *or another* killed Brenton Oliver.
"2. The killing was done while Johnathan Carter was committing criminal discharge of a firearm.
"3. This act occurred on or about the 1st day of December, 2015, in Sedgwick County, Kansas.

"The elements of criminal discharge of a firearm are listed in Instruction 11." (Emphasis added.)

6

"INSTRUCTION 10

"Johnathan Carter is charged in Count Three with murder in the first degree of Betty Holloman (felony murder). Johnathan Carter pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. Johnathan Carter *or another* killed Betty Holloman.
"2. The killing was done while Johnathan Carter was committing criminal discharge of a firearm.
"3. This act occurred on or about the 1st day of December, 2015, in Sedgwick County, Kansas.

"The elements of criminal discharge of a firearm are listed in Instruction 11." (Emphasis added.)

To supplement pertinent parts of the above felony-murder instructions—and to provide an elements instruction for the separate charge against Carter of criminal discharge of a firearm at an occupied dwelling—the district court gave the jury the following instruction:

"INSTRUCTION 11

"Johnathan Carter is charged in Count Four with criminal discharge of a firearm. Johnathan Carter pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. Johnathan Carter discharged a firearm at a dwelling.
"2. Johnathan Carter did so recklessly and without authority.

7

"3. The dwelling was occupied by a human being at the time, whether or not Johnathan Carter knew or had reason to know it was occupied.

"4. This act occurred on or about the 1st day of December, 2015, in Sedgwick County, Kansas."

At the jury instruction conference, Carter objected to Instructions 5 and 10. Defense counsel stated that as written, the instructions did not require the jury to find a causal connection between the killing and the underlying felony, thus lowering the State's burden to prove felony murder:

"[S]pecifically, what [the jury instruction] says is, [element one of felony murder] is, Johnathan Carter or another killed Brenton Oliver. Again, that can be anybody. There is no causal link between [elements] one and two. And the killing was done while Johnathan Carter was committing a [*sic*] criminal discharge of a firearm. What we mean by that is if [the State] can show, just for argument's sake, that Johnathan Carter criminally discharged a firearm at an occupied dwelling. If they can show that, then basically the way this is written, if somebody else on the other side of Wichita kills somebody, then he's responsible for it. It doesn't say anything to indicate how one and two are linked. It doesn't provide any additional elements. I think, as it [*sic*] written, it's not a crime."

Carter also challenged the causation elements' omission because the underlying felony was criminal discharge of a firearm at an occupied dwelling, but the evidence showed Carter was shooting at Oliver, not the house. Finally, Carter objected to the term "or another" in element one, stating, "[T]hat needs to be identified what it is." He raised the same arguments in his objection to Instruction 10.

The State responded that language in the second element provided the causal link between elements one and two: "the killing was done while Johnathan Carter was committing criminal discharge of a firearm."

8

The district court agreed with the State, holding that the instruction is "right out of the statute . . . [and] PIK" and the "causal connection that the defense has a concern about is taken care of with using that same word killed and killing in elements one and two."

Carter later moved to arrest judgment or for a new trial. In the motion, he again challenged Instructions 5 and 10, asserting there were two problems with the instructions: (1) the instructions did not require the jury to find a causal connection between the killing and the underlying felony; and (2) the instructions did not require the jury to find a connection between the individual who killed the victims and Carter. After hearing arguments, the district court denied Carter's motion for arrest of judgment or a new trial.

*Causation*

Carter asserts in this appeal the jury instructions regarding his felony-murder charges were not legally appropriate because they did not require the jury to find a causal connection between the res gestae of the underlying crime (criminal discharge of a firearm at an occupied dwelling) and each killing.

Felony murder is the killing of a human being "in the commission of, attempt to commit, or flight from any inherently dangerous felony." K.S.A. 2021 Supp. 21-5402(a)(2). Here, the "felony" is criminal discharge of a firearm, which is included in the statutory list of inherently dangerous felonies. K.S.A. 2021 Supp. 21-5402(c)(1)(O).

Our caselaw has addressed both res gestae and causal connection in the context of felony murder. Specifically, "[i]t is true that there must be a direct causal connection between the commission of the felony and the homicide to invoke the felony murder rule.

9

However, the general rules of proximate cause used in civil actions do not apply. [Citation omitted.]" *State v. LaMae*, 268 Kan. 544, 555, 998 P.2d 106 (2000).

> "In order to establish felony murder, the State must prove two causation elements. First, the death must lie within the res gestae of the underlying crime, which is defined in this context as acts committed before, during, or after the happening of the principal occurrence, when those acts are so closely connected with the principal occurrence as to form, in reality, a part of the occurrence. Second, the felony and the homicide must have a direct causal connection, which exists unless an extraordinary intervening event supersedes the defendant's act and becomes the sole legal cause of death. [Citation omitted.]" *State v. Cameron*, 300 Kan. 384, 396-97, 329 P.3d 1158 (2014), *cert. denied* 574 U.S. 1035 (2014).

The existence of a direct causal connection turns on the time, distance, and the causal relationship between the acts related to the underlying crime (here, Carter's firearm discharge) and the killing. *McDaniel*, 306 Kan. at 616. Thus, the jury's thought process involves determining whether acts related to the firearm discharge and the killing were close enough in time, close enough in distance, and close enough in causal relationship to "form, in reality, a part of the occurrence." *Cameron*, 300 Kan. at 396.

We turn, then, to analyze whether the instructions required the jury to go through the necessary thought process to establish the res gestae relationship and the causal connection between Carter's actions and each killing. As referenced by the district court, the jury instructions match those recommended by the Judicial Council in the Pattern Instructions for Kansas-Criminal. See PIK Crim. 4th 54.120. We have previously held that the use of the PIK language sufficiently incorporates the causation elements required under the law for felony murder. See *McDaniel*, 306 Kan. at 616. That remains true here.

The instructions require not only that the death occur during the commission of the felony with which Carter was charged but also that the killing be perpetrated by the defendant or another in the commission of that felony. *LaMae*, 268 Kan. at 555. In other words, the instructions only allowed a guilty verdict if the jury concluded the killings happened "while" Carter was committing criminal discharge of a firearm. This covers the res gestae requirement of causation. See *McDaniel*, 306 Kan. at 616 (requirement that jury find killing was done "while" defendant was committing underlying felony necessarily required jury to consider whether killing occurred before felony); *State v. Jackson*, 280 Kan. 541, 551, 124 P.3d 460 (2005) (requirement that jury find killing done "while" felony being committed required acquittal if jury believed killing occurred after completion of felony). Although Carter denied committing the underlying crime, the jury separately and specifically convicted him of that crime. By doing so, the jury rejected Carter's defense.

Having established the res gestae of the criminal firearm discharge with the homicides, only an extraordinary intervening event would have superseded Carter's acts to become the sole legal cause of the killing and thus break the direct causal connection between the commission of the underlying felony and the homicide. *State v. Phillips*, 295 Kan. 929, 941, 287 P.3d 245 (2012). Carter has not argued any such intervening event either before the jury or this court, so we need not consider whether one might exist. See *State v. Littlejohn*, 298 Kan. 632, 655-56, 316 P.3d 136 (2014) (an issue not briefed by the appellant is deemed waived and abandoned).

Contrary to Carter's assertions, we conclude that the jury instructions appropriately required the jury to make the necessary res gestae and causal connections between the underlying felony of criminal discharge of a firearm and the killings of both Oliver and Holloman. We find no error in this aspect of the instructions.

11

*Additional Language*

Along with his causation challenge, Carter also claims error because the jury could have convicted Carter even if he had not fired the fatal shots. By making this claim of error, Carter presumes it matters who fired the fatal shot. He asserts that Instructions 5 and 10 were inappropriate because they required the State to prove only that Carter "or another" killed Oliver and Holloman, when the State should have been required to prove that Carter "or another for whom he was legally responsible" killed Oliver and Holloman. He claims that merely stating "or another" could have led to an *improper* finding of guilt if the jury believed Carter did not fire the fatal shots. For reasons set forth below, Carter is mistaken.

The language Carter proposes is taken from Instruction 14, which states:

"[A] person is criminally responsible for a crime if the person, either before or during its commission, and with the mental culpability required to commit the crime, intentionally aids another to commit the crime.

"All participants in a crime are equally responsible without regard to the extent of their participation. However, the mere association with another person who actually commits the crime, or mere presence in the vicinity of the crime, is insufficient to make a person criminally responsible for the crime."

This is commonly called the "aider and abettor" instruction.

Carter relies on *McDaniel* to support his argument, where the district court indeed used that same phrase in the felony-murder instruction. 306 Kan. at 613-14. But even though the *McDaniel* instruction was—as a whole—found to be legally appropriate, that phrase was never at issue.

12

Here, the aider and abettor instruction was given only for the charges of premeditated murder of Oliver and criminal discharge of a firearm at an occupied dwelling, and not for either charge of felony murder. Carter's assertion demonstrates a basic misunderstanding of what must be shown for one to be guilty of felony murder.

It was not necessary for the State to prove Carter either committed the killings or intentionally assisted someone else to commit the killings. For a felony-murder charge, the State need only prove that the killing occurred while Carter committed the underlying felony of criminal firearm discharge, assuming there was no qualifying intervening event. *State v. Dupree*, 304 Kan. 377, 393, 373 P.3d 811 (2016) ("If someone dies in the course of an inherently dangerous felony . . . 'all the participants . . . [are] equally guilty of the felony murder, regardless of who fired the fatal shot.' In short, all participants in a felony murder are principals."); *State v. Thomas*, 239 Kan. 457, 462, 720 P.2d 1059 (1986) ("Under the felony-murder rule, an armed principal in an aggravated robbery cannot be an aider and abettor."). Consequently, "a participant in a felony murder cannot be an aider or abettor and should not be identified as a[n] aider or abettor on a judgment form." *State v. Littlejohn*, 260 Kan. 821, 822, 925 P.2d 839 (1996).

In summary, the use of "or another" here was legally appropriate because all participants of felony murder are guilty as principals. *Dupree*, 304 Kan. at 393. The State was not required to prove that Carter specifically fired the shots that killed the victims—only that the killing occurred during the underlying inherently dangerous felony, of which Carter was convicted. "If someone dies in the course of an inherently dangerous felony . . . 'all the participants . . . [are] equally guilty of the felony murder, regardless of who fired the fatal shot.' [Citation omitted.]" 304 Kan. at 393. As established by our caselaw, Carter is still legally a principal in the felony murder.

13

The instruction was also factually appropriate because the evidence left some question about who fired the lethal shot as to each victim. If the evidence shows or suggests that someone other than the defendant fired the fatal shot, adding "or another" allows the instructions to match the particular factual scenario more closely. *Dupree*, 304 Kan. at 393. Because this language was both legally and factually appropriate, the district court did not err by including "or another" in the challenged instructions.

Finding no error in the jury instructions given by the district court, we affirm Carter's convictions.

Affirmed.