NOT DESIGNATED FOR PUBLICATION

No. 127,704

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANGELO DEMICHAEL HARRIS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL A. RUSSELL, judge. Submitted without oral argument. Opinion filed April 17, 2026. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Kayla L. Roehler*, deputy district attorney, *Mark A. Dupree, Sr.*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., HURST and BOLTON FLEMING, JJ.

PER CURIAM: Angelo DeMichael Harris was convicted by a jury of aggravated criminal sodomy of an eight-year-old boy and sentenced to life imprisonment with the possibility of parole after 25 years. Harris filed a motion for a new trial, which the district court denied. He now raises many issues on appeal, none of which prevail. After careful consideration of the parties' arguments and the record, we affirm the district court's judgment.

1

In March 2022, eight-year-old John (a pseudonym) told his Mother that Harris—Mother's boyfriend—had been forcing John to perform acts of oral sex on him. Mother informed John's Father over Facebook Messenger about what John said but otherwise did not contact the authorities. Father saw John in late June and asked him about his earlier statement to Mother. John told Father that Harris had "forced him to perform oral sex on him."

Father informed the police about John's disclosure. John was then taken to Sunflower House (a child advocacy center) for a forensic interview, where he again disclosed to the interviewer that Harris forced John to perform acts of oral sex on him.

The State originally charged Harris with aggravated criminal sodomy under K.S.A. 21-5504(b)(2). A preliminary hearing on that charge was held in March 2023. The State presented two witnesses—a detective with the Edwardsville Police Department and Erin Miller Weiss, a forensic interviewer at Sunflower House. Notably, Miller Weiss testified that during the Sunflower House interview, John disclosed that Harris made him perform oral sex on him. Miller Weiss stated that John described what the scene typically looked like, how it felt, and how John and Harris were positioned. The State also offered as evidence the recording of Miller Weiss' interview of John.

The State asked the court to bind Harris over on the aggravated-criminal-sodomy charge. The district court took the matter under advisement so it could review the recording of John's interview. It later ruled that there was probable cause to bind Harris over for trial as charged. Harris did not object to this finding.

A few months later, the State filed an amended information alleging that Harris had engaged in conduct in violation of K.S.A. 21-5504(b)(1), not (b)(2). The State

explained that it amended the charges from K.S.A. 21-5504(b)(2) to K.S.A. 21-5504(b)(1) because "[t]he evidence that came out at preliminary hearing and for which the defendant was bound over on is that he—there was sodomy between the defendant and the child, not another person." Harris' attorney responded that he was aware of the caselaw on which the State relied and "that was the evidence in this case," so he did not think he was "in a position to object to them amending it to the particular statute." The court agreed that the amended information would be the basis for the charge against Harris at trial.

The State's case was tried to a jury in late 2023. Many witnesses testified, including John's maternal aunt, Mother, the defendant's sister, the defendant's niece, and Father; multiple officers; Miller Weiss; and a nurse with Advent Health. John—by then 10 years old—testified and described the events leading to the State's charges in detail. Harris also testified and denied all of John's allegations.

The jury ultimately found Harris guilty of aggravated criminal sodomy. After denying Harris' motion for a new trial, the district court sentenced him to a hard 25 sentence—life imprisonment without the possibility of parole for 25 years. We will provide additional facts as they become relevant to our analysis.

DISCUSSION

Harris' appeal challenges several aspects of his case, from the preliminary hearing through his posttrial motion for a new trial. To provide context, we consider these issues in the order they arose in the previous proceedings rather than the order presented in the parties' briefs.

1. *Harris' challenges based on K.S.A. 21-5504(b) are without merit.*

Harris brings several challenges based on the Kansas Supreme Court's interpretation of the statute defining the crime of aggravated criminal sodomy. K.S.A. 21-5504(b) contains two definitions of that offense that are relevant to this discussion:

- "Sodomy with a child who is under 14 years of age" under K.S.A. 21-5504(b)(1); and

- "causing a child under 14 years of age to engage in sodomy with any person or an animal" under K.S.A. 21-5504(b)(2).

In *State v. Fitzgerald*, 308 Kan. 659, 664, 423 P.3d 497 (2018), the Kansas Supreme Court interpreted these provisions and found that K.S.A. 21-5504(b)(2)'s reference to "'any person'" meant "'a person other than the defendant.'" Based on this interpretation, the *Fitzgerald* court reversed a conviction when the defendant had been charged under K.S.A. 21-5504(b)(2) but the evidence at trial showed that the defendant caused a minor to engage in oral sex with *the defendant*, not someone else. 308 Kan. at 666. In reaching this conclusion, the court seemed to recognize that there may have been sufficient evidence to convict the defendant under K.S.A. 21-5504(b)(1), on which the jury instructions were based. But the court emphasized that allegations of insufficient evidence are not subject to a harmless-error analysis. 308 Kan. at 666.

Like the defendant in *Fitzgerald*, Harris was originally charged with aggravated criminal sodomy under K.S.A. 21-5504(b)(2). At the preliminary hearing, the district court heard evidence that Harris had caused John to perform oral sex on him and found there was probable cause to proceed with the case. A few months later, apparently recognizing *Fitzgerald*'s interpretation, the State sought to amend its information to

charge Harris based on K.S.A. 21-5504(b)(1)—"Sodomy with a child who is under 14 years of age"—not K.S.A. 21-5504(b)(2).

Harris did not challenge the district court's ruling at the preliminary hearing and did not object to the State's amended information. But he now challenges three aspects of that ruling on appeal: He asserts that the district court erred when it bound him over for trial at the preliminary hearing because there was no evidence that he committed an offense under K.S.A. 21-5504(b)(2)—the only crime charged at that time. He also claims that principles relating to double jeopardy barred the State from amending its information. And he asserts that the Kansas Supreme Court's interpretation in *Fitzgerald* was incorrect and warrants revisiting. We find none of these arguments persuasive.

### 1.1 *Harris did not preserve his argument that the district court erred in binding him over on the wrong subsection of the criminal statute.*

Harris first argues that his conviction and sentence must be reversed and vacated because the district court erred in finding probable cause to bind Harris over for violating K.S.A. 21-5504(b)(2) ("causing a child under 14 years of age to engage in sodomy with any person") when the State actually should have charged him under K.S.A. 21-5504(b)(1) ("[s]odomy with a child who is under 14 years of age").

Kansas courts have long recognized that criminal defendants may not seek to undermine a jury's assessment of the evidence by attacking the evidence presented at a preliminary hearing. For this reason, the sufficiency of evidence presented at a preliminary examination may only be challenged by a motion to dismiss or a motion to grant appropriate relief filed in the district court. *State v. Washington*, 293 Kan. 732, 734, 268 P.3d 475 (2012); *State v. Butler*, 257 Kan. 1043, 1059, 897 P.2d 1007 (1995). Not raising the challenge in this manner amounts to a waiver of any arguments concerning the evidence presented. *Washington*, 293 Kan. at 734; *Butler*, 257 Kan. at 1060.

Harris did not challenge the sufficiency of the evidence presented at his preliminary hearing at any time before the district court. In fact, Harris acquiesced when the State later moved to amend the information to K.S.A. 21-5504(b)(1), acknowledging that the evidence presented at the preliminary hearing was appropriately considered under that subsection. And this approach makes sense; otherwise, the State would have been free to dismiss its case and recharge Harris based on the proper subsection. Harris may not foreclose that option by asserting his error for the first time on appeal. This issue is not preserved for our review.

1.2     *The preliminary hearing was not a former prosecution under K.S.A. 21-5110(a) barring the State from later amending Harris' charge.*

Harris next argues that his conviction and sentence must be reversed and vacated because his preliminary hearing was a "former prosecution" under K.S.A. 21-5110(a) and thus the State was barred from later amending Harris' charge to the correct subsection of the aggravated criminal sodomy statute.

K.S.A. 21-5110 codifies statutory principles relating to double jeopardy. Relevant here, K.S.A. 21-5110(a)(1) states that a "prosecution is barred if the defendant was formerly prosecuted for the same crime, based upon the same facts, if such former prosecution . . . [r]esulted in either a conviction or an acquittal or in a determination that the evidence was insufficient to warrant a conviction." Our criminal code defines the term "[p]rosecution" as "all legal proceedings by which a person's liability for a crime is determined." K.S.A. 21-5111(x).

Harris claims that this broad definition of "prosecution" encompasses preliminary hearings, and thus preliminary hearings are contemplated among the prosecutions listed in K.S.A. 21-5110(a)(1). We are unpersuaded.

6

As an initial matter, Harris' double-jeopardy claim is entirely rooted in his assertion that the evidence was insufficient to bind him over at his preliminary hearing—an argument we have declined to consider since it was not preserved or otherwise presented to the district court. But Harris' claim lacks merit for another reason. A defendant's *liability for a crime* is not determined during a preliminary hearing. Our state's caselaw is clear: "A preliminary hearing is not a trial of the defendant's guilt; it is rather an inquiry whether the defendant should be held for trial." *State v. Hood*, 255 Kan. 228, 230, 873 P.2d 1355 (1994). As the State puts it—"K.S.A. 21-5110 simply does not apply to this case."

### 1.3 *We will not reconsider our Supreme Court's interpretation of the aggravated criminal sodomy statute.*

In his last argument relating to these statutes, Harris argues that the Kansas Supreme Court "has been misinterpreting the aggravated criminal sodomy statute—specifically, K.S.A. 21-5504(b)(1) and (b)(2)"—and that under a "proper reading of the aggravated criminal sodomy statute," there would be insufficient evidence to support Harris' conviction. But this court is duty-bound to follow Supreme Court precedent, absent some indication of a departure. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). And the Supreme Court has given no indication that it is departing or modifying its interpretation in *Fitzgerald*. We thus decline Harris' invitation to overturn our governing caselaw.

## 2. *The district court did not abuse its discretion by granting the State a continuance.*

Harris next challenges the district court's grant of a pretrial continuance by the State due to the unavailability of two witnesses. This argument requires further context.

Harris' jury trial was originally scheduled for late September 2023. The week before the scheduled trial, the State filed a motion to continue the trial due to the absence

of two material witnesses: Stephanie Brown, a detective with the Shawnee Police Department, and Becky Finke, a nurse with Advent Health. The State noted that Brown was investigating an attempted murder and would be out of town during the trial "as part of that investigation." And that Finke was scheduled to be the only on-call forensic nurse at her hospital during the days of trial.

The State explained in a hearing on the motion that it believed Brown's and Finke's testimony would be necessary to support its case-in-chief due to concerns that its other witnesses—particularly members of Harris' family—would not show up for trial or testify as to what they told the police at the time of John's disclosure. Harris objected, stating that the State's concerns were unfounded because neither Harris, his family, nor counsel had attempted to dissuade any witnesses from testifying. Harris indicated that the defense was "ready for trial." The court granted the continuance and set the trial for the soonest possible date—around six weeks later.

Harris' arguments on appeal have changed course to some extent. Instead of focusing on the reasons why the State found the witnesses' testimony to be important (the concern that other witnesses may not appear or be cooperative at trial), Harris now focuses on the nature of the two witnesses' testimony. He asserts the witnesses testified only to "propensity" evidence allowed under K.S.A. 60-455(d)—specifically, that John alleged Harris forced John to perform oral sex upon him in locations outside of Wyandotte County. He also argues that the witnesses' conflicts were work-related, and the State could have required them to appear.

The State asserts that Harris should not be permitted to reframe his arguments on appeal, as the district court never had the opportunity to consider whether it mattered that the witnesses would be presenting propensity evidence. But we are less troubled by this change of tack in this instance, as Harris has the burden to show the district court abused

8

its discretion—a burden that is particularly difficult when an argument was not previously presented.

A district court may grant a continuance of a criminal trial "to either party for good cause shown." K.S.A. 22-3401. A district court has broad discretion to handle its court calendar, and appellate courts generally defer to the district court's decision to grant or deny continuances unless the defendant can show the court abused its discretion. *State v. Ly*, 277 Kan. 386, 389, 85 P.3d 1200 (2004). A court abuses its discretion when it renders a decision that is arbitrary, fanciful, or unreasonable or that is based on a legal or factual error. *State v. Younger*, 320 Kan. 98, 137-38, 564 P.3d 744 (2025).

When a party seeks a continuance due to a witness' absence, the district court should consider the factors outlined in *State v. Howard*, 221 Kan. 51, 55, 557 P.2d 1280 (1976), including: "(1) the probability that the unavailable witness may appear at a later date should the court grant the continuance; (2) the diligence disclosed in attempting to secure the now unavailable witness; (3) the possible prejudice to the defendant; and (4) the materiality and importance of the probable testimony." *State v. Brown*, 59 Kan. App. 2d 418, Syl. ¶ 4, 486 P.3d 624, *rev. denied* 313 Kan. 143 (2021).

After reviewing the record, we cannot say the court abused its discretion when it granted the continuance. The State acted diligently to procure the witnesses, properly serving them and remaining in communication with them before trial. The two witnesses would be unavailable at the time of trial but would likely be available if the trial were continued. And the witnesses' testimony was important to the State's case. The prosecutor explained that the State's concern that given the nature of Mother's relationship with Harris, other witnesses (particularly members of Harris' family) would not show up for trial or would not testify as to what they told the police at the time of John's disclosure.

Harris has not pointed to any prejudice beyond the testimony the witnesses provided at his trial—testimony that the district court found to be admissible propensity evidence under K.S.A. 60-455(d) that Harris does not otherwise challenge on appeal. Indeed, Harris' only objection when the State requested the continuance was to the delay itself—he did not allege (nor did it later become apparent) that any witnesses for the defense would be unavailable to testify at a later date or that some other evidence would be lost. The continuance did not cause Harris undue delay for his day in court; the district court set the trial for the soonest available date—around six weeks later. The district court did not abuse its discretion in granting the State's motion for a continuance.

3.  *Any error in instructing the jury that aggravated criminal sodomy can be committed recklessly was harmless.*

Harris next challenges the jury instruction provided by the district court on the intent necessary to prove aggravated criminal sodomy. That instruction provided:

"The defendant is charged in count I with aggravated criminal sodomy. The defendant pleads not guilty.
"To establish this charge, each of the following claims must be proved:
"l. The defendant engaged in sodomy with [John].
"2. At the time of the act, [John] was less than l4 years old. The State need not prove the defendant knew the child's age.
"3. The defendant acted *intentionally, knowingly, or recklessly*.
"4. The defendant was 18 or more years old at the time the sodomy occurred.
"5. This act occurred on or between the 17th day of August 2018 and the 3rd day of July 2022, in Wyandotte County, Kansas." (Emphasis added.)

During the instructions conference at trial, Harris objected to this instruction's inclusion of "recklessly" as a possible level of intent, arguing that the correct mental state was "probably knowingly as opposed to recklessly or intentionally." The State responded that the Pattern Instructions for Kansas (PIK) indicated that in the absence of a specific

intent for a crime, courts should instruct on all possible levels of general intent. The court noted Harris' objection but ultimately followed the PIK's guidance to include all three mental states.

Appellate courts follow a three-step process when analyzing jury instruction issues on appeal: "(1) determining whether the issue is preserved for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal." *State v. Mendez*, 319 Kan. 718, 727, 559 P.3d 792 (2024). At the second step, we "consider whether the instruction was both legally and factually appropriate, using an unlimited standard of review of the entire record." 319 Kan. at 727. Appellate courts "exercise unlimited review in determining whether an instruction was legally appropriate." *State v. Carter*, 316 Kan. 427, 430, 516 P.3d 608 (2022). And as for whether an instruction is factually appropriate, "there must be sufficient evidence— viewed in a light most favorable to the requesting party—to support the jury instruction." 316 Kan. at 430.

When a party objects to the instruction before the district court, as Harris did here, the statutory harmless error standard applies: The party benefitting from the error—in this case, the State—must show there is no reasonable probability that the error affected the trial's outcome in light of the entire record. 316 Kan. at 430.

K.S.A. 21-5202(d) states that "[i]f the definition of a crime does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element." And K.S.A. 21-5202(e) continues, "[i]f the definition of a crime does not prescribe a culpable mental state, but one is nevertheless required under subsection (d), 'intent,' 'knowledge' or 'recklessness' suffices to establish criminal responsibility."

11

Meanwhile, aggravated criminal sodomy is defined under K.S.A. 21-5504(b)(1) as: "Sodomy with a child who is under 14 years of age." Because the statute does not prescribe a culpable mental state under subsection (b)(1), the district court followed K.S.A. 21-5202(e) and included an instruction on all three mental states.

Harris argues that the challenged instruction was legally inappropriate; he contends one cannot recklessly commit aggravated criminal sodomy because it is inherent in the act that one intends to create contact of the male genitalia. Thus, Harris asserts that despite our State's criminal scheme making it legally possible to recklessly engage in sodomy, "reckless aggravated criminal sodomy should not be recognized as a crime because it is logically impossible." Harris also claims that the challenged instruction was factually inappropriate because "[a]ll the evidence in this case tended to prove that Harris made [John] perform oral sex on him" and "[t]his conduct is either intentional or knowing, or both. But it is not reckless."

We need not resolve this conflict between K.S.A. 21-5202(d) and Harris' logic-based arguments, however. Even assuming the court erred when it included reckless intent in its jury instruction, we have no difficulty concluding that such an error was harmless.

Kansas law dictates that "[p]roof of a higher degree of culpability than that charged constitutes proof of the culpability charged. If recklessness suffices to establish an element, that element also is established if a person acts knowingly or intentionally." K.S.A. 21-5202(c). Here, there was ample evidence available for the jury to conclude that Harris committed aggravated criminal sodomy either knowingly or intentionally—a fact that Harris concedes on appeal. The State bears the burden of showing that there is no reasonable probability that the error affected the trial's outcome in light of the entire record. And the State does so by pointing to this evidence. Thus, even if we assume that

12

the jury instruction was erroneous for including a reckless mental state, any error was harmless in light of the record as a whole.

4. *The State did not withhold exculpatory evidence from Harris.*

Harris also argues that the district court erred when it denied his posttrial motion for a new trial, which claimed the State violated *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), by not disclosing evidence relating to an ongoing Kansas Department for Children and Families (DCF) investigation of one of John's siblings. In particular, Harris argues that the State neglected to turn over what Harris alleges was favorable (or at least potentially favorable) evidence that John did not make any allegation of sexual abuse during an interview at his school with an investigator for DCF. We are unpersuaded.

Again, this argument requires some additional factual background. Immediately following the jury's verdict, Harris filed a handwritten pro se motion for a new trial, listing four claims. His attorney later submitted a more formal motion asserting two additional reasons why Harris believed he should receive a new trial on the State's charge.

Among other arguments, the second motion claimed that Miller Weiss' testimony at trial was the first time the defense learned that DCF had conducted an investigation concerning one of John's siblings and had spoken to John at his school. Miller Weiss testified that she had been told that John "made some sort of statement indicating that something happened, but that he couldn't talk about it." Harris' motion argued that he was unaware of that conversation before the trial and had no report that had been created as part of that investigation. He asserted that if John had been interviewed by DCF as Miller Weiss had indicated and had not provided any information about Harris' sexual abuse, that information would be "significant and exculpatory."

13

When it received Harris' motion, the district court ordered DCF to deliver any child protective services records that included a discussion of John, his parents and siblings, and Harris. The court then conducted an in-camera inspection of the records to determine whether they contained any relevant information related to Harris' claim that the state withheld exculpatory evidence from him. And the court allowed both parties to review the records that the court deemed relevant to Harris' claim.

The district court held an evidentiary hearing on Harris' motion for a new trial in April 2024, after both parties had reviewed the DCF files the district court had released to them. Harris called Denisse Delfin Ruiz, a former DCF worker, as a witness. Ruiz testified that she was assigned a case involving John and went to his school to interview him. According to Ruiz, John "didn't want to disclose much"; he was "very sensitive at the time of the interview"; and he would not answer any questions related to his safety because he stated that "there was a police report that his family had filed and that he was not allowed to speak or say anything related to the case."

After Ruiz's testimony, Harris argued that John's lack of disclosure to DCF was exculpatory—if Harris had known this information, his attorney could have questioned John on "why he said that he didn't want to disclose things" and could have cross-examined one of John's family members about who told John not to talk about the case.

The State countered that in the discovery it had turned over to Harris, the Sunflower House summary noted that a "previous DCF worker [had] made contact with [John], and he said something bad happened and he was not supposed to talk about it." Thus, the State contended that it did turn the information over to defense counsel, even if the State had not produced "that actual piece of paper" (Ruiz's DCF report). The State also stressed that it had submitted a subpoena for all DCF records, and all the records the prosecutor had received had been provided to Harris' attorney. But the State explained

14

that DCF has a policy prohibiting it from turning over records involving active investigations, and this particular investigation "was not closed until after the trial." And the State asserted that even if this information could be construed in some way as exculpatory, Harris had not shown that the knowledge of the previous DCF investigation would have produced a different result at trial.

The district court considered both parties' arguments and ultimately found the statement John made to Ruiz at his school was not exculpatory, but even if it were, it was not "so material that it would have resulted in a different verdict in this case."

Our justice system is rooted in the understanding that defendants in criminal cases have a right to a "fair"—if not a perfect—trial. *Brady*, 373 U.S. at 87. As a corollary of this principle, the State has an affirmative duty to disclose evidence favorable to a defendant when "'the evidence is material either to guilt or to punishment.'" *State v. Warrior*, 294 Kan. 484, 506, 277 P.3d 1111 (2012) (quoting *Brady*, 373 U.S. at 87). A claim asserting the State has withheld evidence in violation of this disclosure rule— commonly called a *Brady* claim—has three essential components: "(1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be material so as to establish prejudice." *State v. Hirsh*, 310 Kan. 321, Syl. ¶ 1, 446 P.3d 472 (2019).

Our review of the record reveals that the reference in the DCF records to John's statement at school does not satisfy these criteria.

*First*, we question whether John's statement provided evidence that was favorable to Harris' defense. That statement did not contradict any other statement that John provided throughout the case; it instead showed that John did not disclose his interactions with Harris when he was talking with a DCF investigator about a different matter.

15

Nevertheless, for the purposes of a *Brady* analysis, there is no distinction between exculpatory and impeachment evidence—both are favorable to the accused, and thus Kansas courts consider impeachment evidence to be exculpatory. *Hirsh*, 310 Kan. at 334.

Harris argues that Ruiz and her notes about the interview would have provided evidence that was favorable to him because John did not make any allegation of sexual abuse during Ruiz's interview. The district court rejected Harris' contention, finding that John's statement was not exculpatory and was not a "nondisclosure," as the parties often called it. Instead, the district court found that based on Ruiz's testimony, John disclosed that something *did* happen, but he was told not to speak about it: Ruiz testified that John said "something bad had happened," but John declined to provide any information because "there was a police report that his family had filed" and "he was not allowed to speak or say anything related to the case."

We agree with the district court that this statement was not exculpatory because it was not inconsistent with John's allegations of sexual abuse, nor was it an example of John not mentioning the abuse at all. John acknowledged that something had happened but stated that he could not talk about it with Ruiz. Because John's statement was not exculpatory, Harris' claim does not meet the first component of the *Brady* analysis.

*Second*, The State did not suppress John's statement—Ruiz's interview with John was mentioned in evidence the State turned over to Harris. As our court has noted before, we "are reluctant to find suppression when a defendant has equal access to the evidence in question." *State v. Fife*, No. 102,488, 2011 WL 6413616, at *3 (Kan. App. 2011) (unpublished opinion), *rev. denied* 294 Kan. 945 (2012). The State argues that during discovery it turned over a Sunflower House summary to Harris which noted that a previous DCF worker made contact with John, and he said something bad happened and he was not supposed to talk about it. The State made this same argument before the

district court, and Harris' trial counsel confirmed on the record that he received the Sunflower House summary in discovery.

This information was available to Harris, and he could have used it to subpoena Ruiz to testify at trial. Harris also could have used this information to investigate the source of the DCF interview and subpoena Ruiz's interview notes. Regardless, we find that even if Harris had access to Ruiz's actual notes, that would not have changed Harris' ability to ask John about his discussion with the DCF worker, what was the bad thing that happened, and why he was not supposed to talk about it. Accordingly, Harris' claim does not meet the second component of the *Brady* analysis.

*Third*, John's statement was not so material as to establish prejudice. Evidence "is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"—that is, if there is "a probability sufficient to undermine confidence in the outcome" of the trial. *Hirsh*, 310 Kan. 321, Syl ¶ 2.

The district court found that even if the DCF records were exculpatory, no cross-examination of John, his aunt, or Ruiz, would have resulted in a different verdict in this case or otherwise changed its result. Harris argues that the district court's assessment was wrong because this case came down to John's word against his, so any evidence that undermined John's credibility could undermine our confidence in the trial's outcome. We disagree. John's statement that "something bad had happened" but "he was not allowed to speak or say anything related to the case" did not in any way undermine or contradict his allegation of sexual abuse. Harris' claim does not meet this third and final component of the *Brady* analysis.

Because Harris' claim does not meet the criteria for a *Brady* violation, the district court did not abuse its discretion when it denied Harris' motion for a new trial.

17

In a related argument, Harris asks this court to conduct a second in-camera inspection of the sealed DCF records to determine whether any other relevant documents escaped the district court's notice. We have completed a thorough review of the sealed DCF file and found no other documents that should have been disclosed.

5. *Cumulative error did not deny Harris a fair trial.*

In his final claim on appeal, Harris argues that even if his claims do not individually require reversal, the cumulative effect of his alleged errors denied him the right to a fair trial. After reviewing Harris' claims, we have found only one error—the jury instruction relating to reckless intent. But this error, which we found harmless, is not considered in our cumulative-error analysis. See *State v. Waldschmidt*, 318 Kan. 633, Syl. ¶ 9, 546 P.3d 716 (2024). Harris' cumulative-error claim is thus without merit.

We affirm Harris' convictions.

Affirmed.